Mr. Robert? Yes, your honor. You may proceed. May it please the court. Good morning, I'm James Roberts, attorney for the petitioner Solomon Nuru. This case is about whether the government complied with their statutory and regulatory obligations when they refused to recognize that Mr. Nuru automatically became an asylee when his mother was granted asylum by the immigration court. I'm sorry, your honor? I didn't say anything. Oh, okay. The answer to this question rests purely in matters of law and how to interpret two regulations 8 CFR 208.14 and 8 CFR 208.24 and also a recognition that these two regulations complement each other. Each of these regulations is tasked with two separate tasks. The first 208.14 has two main tasks. The first of these is deciding which agency has the authority to adjudicate asylum claims. The second task of 208.14 is deciding what options the agency has available to it for adjudication. 208.14a describes the answer to these questions as it relates to the immigration court. It simply states that the judge may grant or deny cases they have jurisdiction over. The court may only grant or deny asylum applications. Those are its only two options. Sections 208.14b and c concern the authority of the asylum office to make decisions and also specifies the options available to the asylum office for adjudication. 208.14b simply states that the asylum office may grant asylum. 208.14c states that if the asylum office does not grant, then they must deny, dismiss, or refer the application to the immigration court. The second regulation at issue here is 8 CFR 208.24. Point 24a is concerned with the termination of asylum that was granted by the asylum office only. It has no effect on the termination decisions that are made by the immigration court or any other agencies. 8 CFR 208.24e states that when an alien's status is terminated under this section, then the service shall initiate removal proceedings as appropriate. So the only real issue before the court today is to determine whether 208.24a and e make section 208.14 superfluous, as argued by the respondent. Our position, of course, is that the two regulations are complementary. 208.14b and c applies as long as the case is in the jurisdiction of the asylum office, and as long as the case is in the jurisdiction of the asylum office, the asylum office cannot bypass and ignore 208.14. So this argument of the respondent that 208.14 of the petitioner, excuse me, I'm used to saying respondent from immigration court, the argument of the petitioner that 208.14b and c remains applicable even when 208.24 is at play is supported by section 208.2a. This regulation states that the asylum office, through the refugee asylum and international operations office, shall have initial jurisdiction over asylum claims. 208.2b states that the immigration court has jurisdiction over asylum claims upon the filing of the charging document, such as the of 2013 in these proceedings. It is upon that filing of that charging document that the jurisdiction over adjudication of this case exchanged from the asylum office to the immigration court. Simply put, the authority of the case lied solely with the USCIS until the NTA was the asylum office terminated his mom's asylum and filed their charging document with the court. Then as a result, they exchanged their jurisdiction to the immigration court. 208.24 does apply to this case. It is very important in how this case proceeded, but it simply states how asylum is terminated, the procedures that the asylum office uses in determining whether to terminate asylum. It also mentions that removal proceedings must begin when asylum is terminated. Mr. Roberts, can I ask a question? So you just indicated as you were talking through these regulations that the USCIS office terminated the original asylum application. I mean, but doesn't that essentially make the government's point that that asylum application was terminated and the rights there under were extinguished? Don't we have a new case now being pursued in the immigration court? And that new case necessarily requires consideration of new facts. And one of the unfortunate new facts of this case is that your client is no longer a minor. And doesn't that end this case? Your Honor, I don't believe it does. And I think this is one of the fundamental misunderstandings that I believe was the problem throughout the process. So what does it mean? I'm sorry. What does it mean to terminate the asylum? What do you think that means in terms of the consequence for the subsequent proceedings in the immigration court? Well, there are lots of things that I think about that question, Your Honor. The first has to do with what I was talking about with 208.2. I think 208.2 is extremely important for this question. And the reason for that is it talks about the jurisdiction of the asylum office. So why this is important is that when the asylum office has a jurisdiction, they can approve it. While they continue to have jurisdiction, they can terminate it. So this intermediary step of approval and then termination doesn't change the fact that at the conclusion of their jurisdiction, they did not grant asylum. Since they did not grant asylum at their conclusion of their jurisdiction, then the case should have been referred. It is not a new application because at the end of the jurisdiction, asylum was not granted. The fact that it was granted as an intermediate step only confuses the issue. I'm not sure what you mean that it's granted as an intermediate step. It either was granted or not. And the government says it was granted at that initial step and then subsequently terminated because of the fraud, which the immigration judge, to his credit, at least engaged with and determined that your client was not at fault. But the fact of the matter remains that that initial application was granted. This asylum application was granted. It was terminated. And from the government's perspective, we're now dealing with a new claim and the sad fact that your client is now an adult, no longer a minor, and therefore no longer entitled to derivative asylum status. So I don't know what you mean by terminated as an intermediary step. What does that mean in the context of the regulations? I think it has to do with the meaning of this phrase you used as an initial step they granted. As an initial step, she was granted asylum. As an initial step, that asylum was terminated. They're both initial steps under the regulation. They're both initial steps under the regulation because... What else would have had to have occurred in order to make that final, in your view? The loss of jurisdiction. It becomes final upon the loss of jurisdiction. The jurisdiction is lost according to 2.8.2b when the NTA is filed. Until the NTA is filed, it's always going to be an initial step as 2.8.14 states. It's the initial authority... Sorry, Mr. Roberts. Let me make sure I understand. But asylum is always, I guess, contingent. It's never permanent. I don't think you can always, you can lose the benefit of asylum either because of change in conditions in your home. It depends with regard to the petitioner. So in that sense, I guess you're right that it's never final. But I don't know that it answers the question as to the fact that the USCIS terminated that determination of asylum. And then a new case began anew in the immigration court. And I'm still struggling to understand why that new case doesn't now require consideration of new facts. Because, Your Honor, I do not believe it is a new case. I think the arguments that this is a new application is a circular argument. They're saying it's a new application because it's not referred. Because it's not referred, then they say he's not protected by the Child Status Protection Act because he's over 21 and he needs his own application. In our opinion, this is not a separate argument. It's the same argument we've been discussing. If the case is referred, then the judge adjudicates the referred application. If it's not referred, the IJ adjudicates the new application, which I'm arguing that it is, then his mother's adjudicated asylum application was, in fact, the original one. And the petitioner is protected by the CSPA. Because the case was referred by an active regulation, it's not a new application. The regulations, in fact, allow an application to be amended and supplemented. The immigration judge having jurisdiction may permit an asylum applicant to amend and supplement under 8 CFR 208.4c. When additional grounds were added to the asylum claim, in fact, it was being amended and supplemented. It's not a new application. Again, the reason that I say that it's not a new application is because it is referred. When an application is referred, it is sent to the court as part of a referral package in compliance with 208.14b and c. Mr. Roberts, I'm sorry. Go ahead, Chief. Thank you. Where in the record is the evidence that, or the finding, or whatever it is, the document that says this case has been referred from USCIS to the immigration court? Where is that in the record? Well, to the contrary, Your Honor. I think if you look at the pages 74 and 75 of the certified administrative record, it says to the opposite. It makes it clear that there is no referral package. Again, this is a circular argument that I was referring to. They're saying that this is not a referral because there's no referral package. This is the point that I was trying to make. It's not the referral package that makes it a referral. It's the application of the regulations that make it a referral. Okay. Well, Mr. Roberts, it was referred from the government standpoint, as they've said, for the purpose of removal, to give due process for removal, correct? But why do you seem to concede that DHS has the authority to terminate asylum? Why do you concede that? They have the authority to terminate asylum because 208.24 gives them that authority. Yeah, but you started the movie too late. You got to start the movie from the beginning. The beginning is the United States Congress. Congress acted in the Immigration and Nationality Act. That's where the authority comes from, section 1158. You have to first deal with that. And in that authority, it said it gave the DOJ the right to grant and terminate asylum, but it did not do so for DHS. It did not. And when it amended that act in 2005, it specifically did not give them that right to terminate asylum. The referral is for removal, but the asylum is the arbitrariness. I think I'm going to get in more with your colleague there because you seem to me, fortunately for you, you can't concede what the law is if you're wrong. The law deals with the time because you didn't argue that. But as to what you're talking about the referral, the government said a referral is just for removal because they said we've already terminated asylum. As a matter of fact, the government is arguing in this case that the IJ had no jurisdiction or authority even to consider them that because asylum was already done deal. And that's the whole theory that it must have been a new application for asylum because the first one was done before it got to the IJ. We're going to get into that later. But I'm just curious that you bypassed it. These regulations, CFRs, Congress didn't give that authority to come up with regulations. And the statute is clear. But we'll get into that later. I'm just wondering why you concede that. I think it's a misunderstanding. The way that I see it is that it's a very simple issue. The applicant, Ms. Wilson, the mother of the respondent, applied for asylum. Once she applied for asylum, it became the authority of the asylum office to make, to adjudicate that case. At the end of the adjudication, what we know is they failed to grant asylum. That's all we know. The termination is a red herring because what happened? She applied for asylum. They did not give it to her. That's all. Since she applied for asylum, they didn't give it to her. It was referred to the court for adjudication of that case. That's what happens with a referral. That's what happens when a person applies for asylum is inadmissible under the 212A6CI. When she presented that case, we know that she discussed the issues that were at bar at the asylum office regarding the fraud because she would have been disqualified from asylum if there had been fraud as found by the court. She did confront all of these issues. She confronted everything that was about that original application. She confronted the issues of fraud that were related to the original application. It was the original application that was being decided. Of course, I understand your argument that the INA does not permit a final denial. It doesn't, but at the same time, they can terminate their decision to grant asylum. This only means that in the end, they chose not to give asylum. It's a separate issue, I think, than the one that the court's making. But counsel, if you make an application for asylum and you're denied in the first instance, there's a right to appeal, correct? Just answer the question. No, your honor. If you're denied under 208.14C, then there is no appeal. You cannot go to the federal court. I've tried that, and it just doesn't work. Federal court? I'm not saying the federal court. You can't appeal it to the immigration court either once it's denied. The reason is clear from 208.14C because a denial means you're in status. A denial means you're in status. If a person is in status, then he can't be sent to the court because he has status. A referral is done when a person is not in status and is inadmissible. The word deny has a different meaning under these terms. All right. Are you finished? Oh, sorry, your honor. So again, I wanted to look at 208.14 one more time. And we can see from this section that the asylum office has four options, unlike the two that the immigration court has. The options that the regulations give them are to grant, to deny, dismiss, or refer. As long as the case is in their custody, they're tasked with choosing among these four options. Among these options, we know she was not approved. We know she was not approved because the approval came. It was terminated. Those two cancel each other out. They still had jurisdiction. It was not approved. Because it's not approved, then you take a look at the next sections. If it's not approved, they have to deny, dismiss, or refer. Thus, the asylum office, while they still had jurisdiction, the approval came and it was gone. The DHS was misled by the fact that this intermediate step, the asylum approval before termination, was initiated and their jurisdiction ended. That's why I call it an intermediate step, because they have the initial jurisdiction over the claim. They have the initial jurisdiction over the claim. So, during that initial jurisdiction period, it doesn't matter that it was approved, denied, approved, denied. They can do whatever they want during the time that they have jurisdiction. At the end of their jurisdiction, we know that she was not approved. Therefore, they continue to have the obligation to deny, dismiss, or refer. The asylum application remained in the hands of the asylum office through the time of the approval. Since the approval was not the final option to deny an application, this is done when an applicant is in status, as it's shown in the regulation. They may dismiss an application. A dismissal is done when an application is not granted, but removal proceedings may not be initiated, or they may refer an application. 208.14c1 states that in a case of an applicant who appears to be inadmissible or deportable under section 212a or 237a of the Act, the asylum officer shall refer the application to the immigration judge together with the appropriate charging document for adjudication in removal proceedings. Mr. Noro and his mother appeared inadmissible and deportable upon the final adjudication of the case. Therefore, referral under 208.14c1 is the only option that was available to the asylum office. This would have been the same if he were terminated for the other reasons that termination exists. Reasons for termination are included in 208.24. As the Court said, there are multiple reasons for termination. A showing of fraud, a change of circumstances, criminal reasons, and all of these reasons, whether it's terminated for fraud, whether it's terminated for criminal reasons, whether it's terminated for change of circumstances, it doesn't change the fact that when that termination happens, then the jurisdiction ends. Prior to the time that the jurisdiction ends, the notice to appear is filed. So, it doesn't matter that it was granted and then terminated. What matters is the asylum office chose not to enter the U.S. when he was 14. In 2006, he began living as an asylee. He obtained his status based upon his mother's approved asylum claim based upon her politically motivated fear and her continuing fear of detention. When the asylum office, years later, obtained information that seemed to call that approval into question, they still had jurisdiction over the case. They never lost jurisdiction over the case. Because they continued to have jurisdiction during this topsy-turvy period of approval and denial, it doesn't matter that the approval came, that the termination came. What matters is at the end of their jurisdiction, they did not approve asylum. They handed over jurisdiction to the Court and they should have referred it when they did that because they must have denied it, dismissed it, or referred it, and denial and dismissal are not options. So, um, so another argument, uh, I think your time is up. Oh, oh, I'm sorry. Yeah. All right. Okay. Mr. Perkins. Good morning, your honors. May it please the Court. I'm Paul Perkins on behalf of the Attorney General. The petitioner was deported earlier this year after the Department of Homeland Security terminated his derivative asylee status after he conceded to removability and after he submitted and then withdrew his own asylum application. Petitioner now asks this Court to find that his removal proceeding should be terminated because even though he is now an adult, he is nonetheless eligible for, um, for derivative asylee status reserved only for children through his mother's newly granted asylum application. But this is the same argument that both the Immigration Court and the Board of Immigration Appeals already rejected and that this Court already determined did not warrant a stay of removal because the petitioner urges an interpretation of the applicable regulations that are contrary to a plain reading and the Board's implementation of those regulations was not manifestly contrary to law. This Court should deny the petition for review. Now, as the petitioner's counsel just explained, the central question is, in fact, the only issue before the Court now is whether the applicable regulations 8 CFR 208, 208-14 and 208-24 require an asylum officer after approving an application and granting asylum and then subsequently terminating the grant of asylum and initiating removal proceedings must also refer the underlying asylum application to an immigration judge to perform a de novo review. According to a plain reading of these regulations, the answer is no. The regulations provide two separate processes, a process for the initial adjudication of an application and then a separate process for termination of the grant of asylum. So we'll adjudicating asylum applications and what we see in B first. Well, first we see two separate tracks and in B we see that an asylum officer can grant an asylum application and C we see that if an asylum application is not granted after an interview that the asylum officer must deny, dismiss or refer the application for adjudication and removal proceedings and in C1 as the petitioner's already explained in C1 we find that the application is referred for adjudication and removal proceedings when the applicant appears to be inadmissible and deportable. And now there are two issues I want to discuss here in this particular regulation. So the petitioner claims that once an application is terminated that the application essentially becomes non-adjudicated again. It essentially goes back in time to when the application was initially filed, before it had been approved, and before it was then terminated. But there's nothing in 14 C to suggest any sort of process beyond the initial adjudication of an application. Mr. Perkins, Judge Diaz here. Chief Judge Gregory asked the question of your colleague on the other side about the authority of the DHS to actually terminate applications. Can you respond to that? I mean, it seems clear on the face of the regulations, but there may be an inconsistency here with the statute. Can you address that? Right. So I'll begin with the petitioner has not raised this issue, didn't raise this issue below to the immigration judge, to the Board of Immigration Appeals, has not raised this issue now to this court, has in fact conceded that DHS has this authority to terminate an application. Counsel, you can't concede that. We determine what the law is. This is a jurisdiction. You raised the question yourself because you said that the IJ had no jurisdiction to even consider once it had been terminated. So it's before the court. And go ahead and proceed with in terms of statute. Tell us exactly. I brought it up because obviously Mr. Roberts didn't think much of it. But the point is that what is the what is the statutory authority of DHS to terminate assignment, terminate? Sure. First, let me say, because this issue has not been raised, it hasn't been fully briefed. In fact, it hasn't been briefed at all. So if there are any arguments I don't bring up right now, we're not waiving those arguments. So and also I would say that both the Fifth Circuit and the Third Circuit have held that an immigration judge doesn't have jurisdiction to review a termination decision. The Board of Immigration Appeals, a matter of Ace J, has held the same thing. And I know this this issue has been briefed in the Ninth Circuit before. And so the arguments we raised raised in that case are, in fact, I think Petitioner's Counsel made this argument, which is the grant of authority to DHS to to grant asylum in itself carries with it the ability to then terminate that asylum. Where did you get that from? What's the statutory authority for that? Well, again, this is an argument that we've it's an argument here. It's an argument makes no sense because you're saying that that if the statutory Congress gives you the power to grant something automatically, you can deny it. That's not in any framework of all the law. The point is, you know, it does not give DHS the authority to terminate asylum. Only the DOJ. And when they changed the law in 2005, they made it very clear that that they that the DOJ can grant and terminate. But it specifically said in terms of DHS could only grant. You have no authority to do so. And under the framework of the CFRs is a no moment because Congress never gave you any assignment to make regulations to interpret the statute. And it's a clear statute. And it's not it is not it is deliberately kept from you. This Congress could have changed that because it's set forth you can grant, they can grant, you can grant, but deny is only and it makes sense. Because that when you talk about the take terminating someone's asylum should be more no disrespect than an officer doing it. There's a whole rubric under the Attorney General and the DOJ for Article One judge to look at those things. So Congress never gave DHS the authority to terminate because that's you need that because the whole point you would say it had to have ended her asylum. And even though she won for the IJ, it had to have been a new application. No, you never had the authority to terminate their asylum. What you did was you looked at it and you referred it for removal. But you could not terminate the asylum. You can't show me anywhere where you have given that authority to do so. I understand the point you're making. I'm making a point. That's the law. We act under the Congress. We don't make up the law. We Congress specifically did not give you the authority to terminate asylum. Only the DOJ can do that. You can grant it, but you can't terminate it. I understand Judge Gregory. I would say that the Fifth Circuit and the Third Circuit and the Board of Immigration Appeals have disagreed with the position you're articulating. And I will say that the Department of Homeland Security can't just revoke, terminate asylum for no reason at all. There are legitimate reasons. For example, in this instance, in 208-24-C1, we find then the asylum, the granted asylum can be terminated based upon a finding of fraud such that the application should have never been granted to begin with. Can I, can I, I apologize because this is not an issue that I'm very familiar with. But why, why wouldn't we look and maybe I'll just need to do more work on this. I don't want you to speculate, but why wouldn't we look at 6 U.S.C. 271-B3, which gives DHS the authority to adjudicate asylum applications. And if we go back to sort of the prior case where we talk about sort of fraud and the inducement of a contract is, is void at initial sort of time. And in the same way, if we can adjudicate an asylum application, if there was fraud in the initial adjudication, then the initial adjudicator can remedy that by saying at the time it was first granted, it was based on fraudulent conduct. And therefore, the asylum application that was previously granted was based on fraud and therefore is ungranted, which is another way of saying terminated. But why that, excuse me? Yeah, that's exactly right. Judge Richardson. In fact, that's, that's sort of the point, although less articulately, that's the point I was trying to make when referring to 208-24C1, where the Department of Homeland Security has the authority per that regulation to terminate a grant of asylum on the basis of fraud in the underlying application. So I think you're exactly right. The point I was trying to make, if I could move on. But even if that's, even if that's right, that would only be for the purposes of the office of making that determination. But the referral would have to be due process for the IJ to look at that. It wouldn't automatically terminate. Think about that. All you have to do is make an allegation of fraud. You adjudicate it with a non-title, you know, Article I judge. You make this determination by an officer. And then that ends. And you go and find out that it was a bogus reason for the fraud. Then they have to go all the way back. The problem is the persecution that you were, that was the basis for the asylum, let me tell you how many years ago, may be very difficult to then accumulate that. And then a derivative asylum as here, Mr. Nuru, is lost. The whole idea, that's why Congress did not give you the right to terminate. Yes, you can adjudicate. You can adjudicate many things. You can tell whether how much this and that, but that doesn't mean termination. And it specifically said only DOJ could terminate. Because it's parallel, these other things you're talking about, but the parallel stops with termination. And it makes sense because you can't terminate it. You refer it that there's reason to believe there's fraud and we're referring this for removal. But the question ultimately of whether or not it should be terminated is for the IJ. And that's what Congress meant. And that's what it said. We know the world might construe by its wit, but we must construe by the law. And the law is based on the Congress. Everything else, we always say we're a passive branch of government. We adjudicate, interpret what Congress did. And Congress made it clear that DHS, an agency with officers, cannot terminate asylum. Asylum was very precious. You know, asylum is so precious that even our court, an Article 3 court, we can't even grant asylum. Even if we determined that it was totally done wrong, we'd have to go back and back because only the Attorney General can do that. We can't even as a court, as a remedy. And that's why Congress did not give DHS officers, prefects, the right to terminate. Yes, you can adjudicate. Your adjudication comes along. You look at the application, you do those things, you decide whether or not you can purge, whether or not you can not. But termination is special. And Congress made it special and re-emphasized that in 2005, when it changed the ID Real Act, it said, you only the Attorney General. And you know that. And you know about the Ninth Circuit case. And I agree with you, counsel. It was not briefed. Again, Mr. Roberts, that's why I could only mention it to him and didn't even talk in front of him to you as well. But you have to look at the law. And you can't even not brought up this court has to follow the law and what Congress allowed. Not what lawyers, what their preparation is and what their arguments are and what's there, it's what Congress did. And you had to do it. Those cases you cite, none of them really looked at that. Look, I just looked at those cases. None of them grappled with the idea of Section 1158. That's where it starts. So you can't bring people that you had no right to do that Congress never gave you to do. And that's why her asylum never ended. It never ended. And when she had a chance to have a due process hearing on the issue of fraud before Article I judge, as Congress laid it out, she prevailed. There was no fraud, no proof of sufficient fraud. And her asylum never ended because you couldn't terminate it. That's why you're less with that. So but I understand you may not know what the law is in terms of that. You're not ready for that. And that's not your fault, because I guess that wasn't teed up properly for you. That's why you always start with jurisdiction. I tell all my law clerks, the first thing Article III judges determine, do we have jurisdiction to handle this case? No matter what the merits are, how much we might like and enamored by your arguments, we don't have jurisdiction. You didn't have jurisdiction to terminate. And the termination is not there, never ended, and we still have derivative abilities as that. Because think about the alternative. The alternative, you could just have a fraud, and then it's terminated. Then you got to go back, well, you won your case, you win the battle, but you're losing the war. And how would he ever be able then now to go back since he's been here all these years around the states, show persecution in that country? If you think about it, this is why Congress didn't give that. It really does. It's a sense of justice that Congress did that. They know they were there. DOJ has a whole scheme laid out. DHS doesn't. They just sort of, okay, you're terminated. Apparently not for a good reason when the DOJ looked at it. Well, so a couple of points in response, Your Honor. I do understand what you're saying, but what I will say is that the grant of asylum by a Department of Homeland Security is entirely discretionary. The department does have authority to grant, as we already discussed, to deny, to dismiss, to refer asylum applications, so that authority is the department's within the regulations and within, we would argue, the statute by its very nature because it gives the department the authority to deny, to dismiss, to approve. There is, but I've already been, yes, Your Honor. Mr. Bergen, I'm sorry. I'm still trying to get caught up. So as I understand the state of play, the regulations permit termination. The argument that the chief has laid out is that the statute doesn't permit the regulations. And I guess the question I've got and haven't thought through is where the regulation is in place and it permits termination. There's been no challenge under the APA to the regulation. Aren't we bound by the regulation, absent a challenge under the APA? The APA provides the avenue for challenging regulations. There's been no such challenge to the regulation. Can we then invalidate, absent argument here, the regulation that permits termination? That sounds right, Your Honor. Again, this hasn't been fully briefed, and so I don't want to speak out of turn. As far as I know, the regulation has not been challenged under the APA. That's certainly not part of this petition for review, this argument. As I said, it hasn't been raised. But one other- But Counselor, you know that that's not required. Only Chevron deference we have to give you. And here, you can't come close to making a Chevron deference argument because the statute never laid out in the APA process. That occurs when Congress gives you the authority to promulgate regulations, and there's a procedure for looking at that in review and consultation. That would have happened. But here, you never were given task with that. That's why there's no APA challenge, and there's no Chevron deference. We're looking at the elements of that. You don't- Those are your assignments. We don't defer to it. And the statute is clear. And in 2005, I don't see how Congress could have made it clear. It couldn't have been an accident, a misstep, an oversight. No. We said, no, DHS, you don't- You're not giving you the right determination. It's one thing that's key. You can adjudicate. What it says, you can deny, you can defer, and those things like that. But once you do grant it, it's a property interest. Is it absolute? No. It's not absolute. But when it comes to terminating, it's- Congress said only the DOJ can do that. That's how precious it is. That's a very important part. It distinguishes America from a lot of countries in that asylum. And it means something. And it's important. And you just can't whisk it away because it comes from Congress. And that's why the Attorney General has those authorities. And it's not here. And I understand. I appreciate, counsel, you're not ready on it. And maybe we can do something about it. I don't know. In terms of maybe give you a chance to look at it. But I don't know. But the law is, I think, pretty clear in terms of the authority. You don't have it to terminate. All right. Go ahead. Thank you, Your Honor. Yes. I understand the point you're making. If the court is inclined to rule in that direction, I would ask that you ask the parties or- I'm not even sure this is the right vehicle for your holding because the petitioner has conceded and, in fact, it appears endorsed our argument that- You can't concede the law. It's like you can't concede jurisdiction. You can't- Understood. Understood. The point I'm trying to make is if you are inclined to rule in that direction, we would ask that you give the parties an opportunity to brief that particular issue because, as I've said several times, that issue has not come up at all in this case. And I understand that it's an issue that you're interested in. And so I would ask that you give the parties an opportunity to brief that issue. If we could get back to the regulations, another point I wanted to make about 20814B and C is that when- Under 14C, when an immigration judge has jurisdiction to adjudicate that application- And the reason is we can see in the language itself that upon referral, so when an application is referred, it is referred for adjudication in removal proceedings. And so the immigration judge has jurisdiction at that point to review and to adjudicate the application. That's actually the same situation that any alien would be in in removal proceedings who wants to seek asylum. At that point, they would file an asylum application with the immigration judge. And the reason that's significant is, as we've talked about many times in the past 15 minutes or so, the petitioner has conceded that the immigration judge does not have jurisdiction to review the termination decision. So under the petitioner's reading of the regulation, what we have is after DHS approves an application and then terminates the grant of asylum and refers it to an immigration judge, the immigration judge does not have jurisdiction to review the termination decision, which in this instance, it was a determination that the application should have never been granted to begin with because it contained fraud. So there's no jurisdiction to review the termination decision, but there is jurisdiction according to petitioner to review, to perform a Danova review of the underlying application. So the problem with petitioner's argument is that those reviews are effectively the same thing. They're both looking at the underlying merits of the application. So we would submit that the only reading of 20814B and C that makes sense is that they speak exclusively to DHS's initial adjudication of an application. If I could take a few minutes to also talk about 20814E and by reference 20824, which set out the process for terminating a grant of asylum. And the language in those regulations provide that any grant of fraud in the application such that the application should not have been granted. And then at that point, upon termination, DHS shall refer, or I'm sorry, shall initiate the removal proceedings as appropriate. And so two points here that I want to make. First, there's no requirement or no inference at all in this language that upon termination of an application, that that application is then referred to an immigration judge for a Danova review. And there's no suggestion that an application upon termination returns to its initial status upon initial filing. And the reason that point is significant is because if DHS had wanted to include this referral process after termination, they would have said so. And we know that because that language is included in 20814C1. As we've already discussed, that's where it provides the asylum officer shall refer the application to an immigration judge for adjudication and removal proceedings. That language does not appear in 24A1. The language there simply provides that the agency shall initiate removal proceedings. It says nothing about referral of the application. And that makes sense because by definition, when a grant of asylum is terminated, that means that the asylum application has been adjudicated. It can only be terminated after it has been approved, after the application has been approved, and only after an asylum officer determines that there was fraud in the application, such that the application should have never been granted. Therefore, we believe that 20814E and 20824 provide the process for is over, and there's no language to suggest otherwise. Now, this interpretation of the regulations is entirely consistent with the Board of Immigration Appeals decision in matter of ASJ. Now, in that case, the facts are similar to this case. The petitioner applied for asylum, or I'm sorry, the alien applied for asylum, was granted asylum. Ten years later, the grant of asylum was terminated. At that point, the removal proceedings were initiated, and the immigration judge in that case did look at the termination decision to determine whether it agreed with that decision. It did not. But the Board of Immigration Appeals, in reviewing what the immigration judge did, determined that the immigration judge did not have jurisdiction to review the termination decision. And importantly, the BIA held that the asylum, or I'm sorry, the alien did have a right to reapply for asylum, to file a new asylum application. This is consistent with the Fifth Circuit's understanding of these regulations, consistent with the Third Circuit's review of these regulations, and that's the exact process that played out here. The exact process. And counsel, but in ASJ and those others, they never looked at the statute 1158. They didn't interpret the statute at all. I understand. Right. They never addressed the issue. It's like hidden in plain sight. Everybody's running all around with DHS and, you know, of course, all this is post 9-11, and DHS was formulated under that whole different rubric. But that's why Congress said, no, but still, there's due process left. That's why this agency does not have the right to terminate. And none of them looked at 1158. None of them. Right. And again, you know, as I've said before, our interpretation of the statute is that giving DHS the authority to grant asylum within it, there's an inherent authority to evaluate whether that asylum should or should not have been granted somewhere down the road. And per the regulation, upon finding a fraud, the grant of asylum can be terminated. So for all these reasons, we submit that the board correctly concluded that the this conclusion was certainly not manifestly contrary to law. If there are no further questions from the court, we therefore ask the court to deny the petition for review. Thank you, counsel, for your argument. Appreciate it. Thank you. Mr. Roberts, you have, we'll give you some time. I'll be very brief, your honor. The question is whether the government just said it's over, the government said when it's terminated and cannot be referred because it's over. In my earlier arguments, I explained why it's referred. However, the chief judge has also explained why this argument cannot succeed, why it cannot be over when it's sent to the court. This is because the DOJ can grant and deny asylum, but the DHS can only grant. They can't say it's over. Then termination would mean that the DHS has the authority, the statutory authority, to deny a case, which they do not have. Well, I think they actually do have the authority to deny. Well, I thought the chief's point was that once granted, they can't terminate. I don't want to speak for him, but. I know Mr. Roberts is telling me, yeah, but yeah, that's the point, the termination. Anything further, counsel? No, your honor. All right. Thank you. Thank you so much, counsel. We can't come down and greet you and shake your hand, but know that we very much appreciate your argument. Thank you so much for helping the court with these very thorny issues, and we ask you to hope that you will stay safe and be well. Take care. Thank you.
judges: Roger L. Gregory, Albert Diaz, Julius N. Richardson